UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

In re:                                                    Case No.: 17-12521-13

DONNA B. RAY,

            Debtor.

---

DONNA B. RAY,

            Plaintiff,
   v.                                                   Adversary No.: 17-102

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION, PERFORMANT RECOVERY,
OLD NATIONAL BANK, ANCHOR BANCORP
WISCONSIN INC., and ABC CORPORATION,

            Defendants.

---

## **MEMORANDUM DECISION**

Plaintiff Donna Ray filed a chapter 13 petition. She filed this adversary proceeding seeking a finding that Defendant Educational Credit Management Corporation ("ECMC") is prohibited from collecting her student loans and discharging her from liability under 11 U.S.C. §§ 727(a) and (b).[1] Plaintiff also objected to ECMC's claim in her chapter 13 petition. The Court held a trial in the adversary and a final hearing on the claim objection.

---

[1] A default judgment was granted as to non-answering defendants Performant Recovery, Old National Bank, and Anchor Bancorp Wisconsin Inc. Great Lakes Higher Education Guaranty Corporation, once a defendant, was dismissed from this action.

## FACTS

On September 16, 2004, Plaintiff signed a Federal Consolidation Loan Application and Promissory Note ("Note") through which Anchor Bank consolidated her preexisting student loans. The Note referred to a preexisting debt in the amount of $24,400. Plaintiff testified she had several student loans, but she did not clarify or recall which loans she intended to consolidate when she filled out the application. In any event, whatever loans she consolidated were student loans—Plaintiff certified on the Note that the proceeds of the relevant loans were "used to finance my education or my child's education."

The Note identifies Anchor Bank as the lender. It lists no guarantor. ECMC presented testimony that Great Lakes Higher Education Guaranty Corporation ("Great Lakes") was the guarantor. Donna Thigpen, ECMC's witness, testified that Great Lakes paid the balance of the Note to Anchor Bank after Plaintiff defaulted. Great Lakes then held title to the Note. Plaintiff provided no contrary evidence.

In 2014, Great Lakes contacted Plaintiff about her default. They explained they were the guarantor of her loan and provided information related to the loan. Two months later, Plaintiff sent a letter to Great Lakes requesting information on the Note. Great Lakes replied with a copy of four pages of the original loan package. It also provided a payment history explanation. The payment history explicitly names Great Lakes as the guarantor and says it acquired title to the loan through a purchase. The Note contains:

- Identification of Plaintiff as the Borrower

- References for Plaintiff

- Identification of the educational loan indebtedness—the loan holder (Anchor Bank), the person asking to consolidate (borrower Plaintiff) and the amount ($24,400)

- Certifications by the Plaintiff

- The Promissory Note section containing the promise to pay to the order of the lender the sums listed plus interest and fees

- Acknowledgement that Plaintiff read the terms and conditions of the Note, the Certification and Authorization, and the Borrower's Rights and Responsibilities Statement

- Plaintiff's acknowledgement that she was entitled to a copy of the Note and the Rights and Responsibilities Statement at the time of signing.

In that same month, Plaintiff also received a letter from Performant Recovery, Inc. ("Performant"). The letter asserts Plaintiff failed to make payments and Great Lakes therefore referred the Note to Performant for collection. Plaintiff alleged in her complaint that Performant claimed an interest in the Note. But it is clear Performant served only as the collection agent on behalf of Great Lakes.

In 2016, Plaintiff filed a different chapter 13 petition. ECMC filed a claim in that case. Plaintiff objected to the claim on the grounds ECMC had not provided the underlying contract. ECMC did not respond to the objection and the Court denied ECMC's claim. That bankruptcy was dismissed at Plaintiff's request in June 2017.

Shortly after Debtor filed her 2016 chapter 13, Great Lakes assigned the Note to ECMC. It appears Great Lakes sent a letter to evidence a batch

3

assignment of loans for debtors who had filed bankruptcy. ECMC presented testimony that Great Lakes automatically assigns all loans to ECMC when the borrower files bankruptcy. Again, Plaintiff provided no contrary evidence.

## DISCUSSION

The Court has jurisdiction to hear and determine this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. §§ 157(b)(2)(A), (I), and (O).

A. <u>Dischargeability Under 11 U.S.C. § 727</u>

Plaintiff filed her adversary under sections 727(a) and (b). That section says the Court shall grant a discharge except in certain circumstances that are not relevant here. It appears Plaintiff cites that section under the belief the previous petition discharged the Note. ECMC filed a claim in the previous case. Plaintiff objected to that claim. Because ECMC did not respond to the objection, the Court denied the claim in that case. No action was filed seeking dischargeability of the loan. Plaintiff then voluntarily dismissed the chapter 13 without a discharge.

Despite the Court's order denying the claim, the Note was not discharged in the previous chapter 13. First, there was no discharge. Thus, none of Debtor's liabilities were discharged. The mere fact the Court sustained the objection does not determine the debt is dischargeable.

Second, failure to file or have a claim allowed affects distributions under a plan. A chapter 13 debtor is entitled to a discharge only after she has made

4

all plan payments and the Court grants the discharge. 11 U.S.C. § 1328(a). Neither of those events came to pass in the 2016 case.

Finally, under Bankruptcy Rule 7001(6), an adversary is required to determine the dischargeability of a student loan. ECMC's claim in both the prior and current case relate to a student loan. It was not eligible for discharge unless so determined through an adversary. The parties brought no adversary in the previous case and the Note was not discharged. Plaintiff's claims under sections 727(a) and (b) fail and are dismissed.

B. <u>Even if Pleaded, Plaintiff's Claims Under 11 U.S.C. § 523(a)(8) Fail</u>

While the complaint asks that Plaintiff be discharged from liability on the ECMC claim, it appears she may have intended to file this adversary proceeding under some section 523(a)(8) theory since that governs dischargeability of student loans. Much of the argument presented by Plaintiff sounds like an argument under section 523(a)(8). For that reason, and in the interest of completeness, the Court will address such a claim based on the evidence and record here.

Section 523(a)(8) excepts from discharge a debt for an educational benefit, unless the obligation imposes an "undue hardship" on the debtor. Though the debtor bears the ultimate burden at trial to prove the elements of an undue hardship, "[t]he creditor bears the initial burden of establishing that the debt is of the type excepted from discharge under § 523(a)(8)." *Bronsdon v. Educ. Credit Mgmt. Corp. (In re Bronsdon)*, 435 B.R. 791, 796 (B.A.P. 1st Cir. 2010). In the context of 523(a)(8), that rule makes practical sense because it is

5

"consistent with the parties' relative access to information." *Connecticut Student Loan Found. v. Keenan (In re Keenan)*, 53 B.R. 913, 916 (Bankr. D. Conn. 1985).

ECMC has met its burden. ECMC produced the Note in which Plaintiff certified she incurred the original loans to support payments for her education. Plaintiff also executed the consolidation through the Federal Family Education Loan Program, a government program designed "to encourage lenders to loan money to students and their parents on favorable terms." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 640 (7th Cir. 2015) (citation omitted). The Note therefore meets the definition of "educational benefit" under section 523(a)(8). Its proof of claim is also prima facie evidence of its claim.

The burden of proof therefore shifts to Plaintiff. Plaintiff does not argue the ECMC debt would impose an undue hardship. Instead, she insists the Note is invalid for three reasons—including incompleteness, insufficient evidence proving valid transfers between the various lenders and guarantors, and lack of consideration.

Her testimony was, in most significant parts, incredible. Plaintiff concedes she had many student loans. She admits she didn't pay some loans. She acknowledges looking into consolidation. The handwriting listing the student loans is hers. She admits the signature on the Note is hers. She admits receiving notice from Great Lakes when she didn't make payments. She says that she simply does not recollect signing the Note, agreeing to consolidate, or what loans were outstanding. Yet the amount of the loans to be consolidated is

in her handwriting. The name of the lender—Anchor Bank—is in her handwriting.

*1. Incompleteness of the Note*

ECMC produced a copy of the Note that contains the first four pages of a nine-page document. Plaintiff's signature is on the Note. She agrees she received the first four pages in 2014. She did not affirmatively deny receiving all nine pages when she signed the Note. She merely argues there is no way for the Court to know whether she received the five additional pages when she signed it. The Plaintiff asks the Court to conclude her faulty memory is enough to render the Note invalid.

In response, ECMC filed the blank loan application form used to execute these types of loan consolidations. The blank form is identical to the form used in the Note in every way, except it contains five additional pages. ECMC presented testimony that the five additional pages contain only boilerplate language about definitions, the Borrower's Rights and Responsibilities Statement, and instructions for completing the form. The Court's review of the blank form confirms ECMC's testimony.

And the Note itself says Plaintiff read the entire Note before signing. It says she understood she was entitled to an exact copy of the Note. It also confirms she understood she was entitled to a copy of the "Borrower's Rights and Responsibilities Statement"—pages 8 and 9 of what she says was missing.

ECMC also offered testimony that Great Lakes typically only transmits the first four pages of these loans when it assigns them to ECMC and ECMC

considers those pages to be the loan in its entirety. Great Lakes regularly assigns these loans to ECMC. To avoid needless paper shuffling, Great Lakes transmits only the first four pages to ECMC. The remaining pages are identical in all such loans and not essential to the loan agreement itself. That understanding, paired with the complete form loan application, leads the Court to the conclusion that the omission of the final pages from the exhibit containing the Note is harmless. For this Court to require Great Lakes and ECMC to transmit boilerplate language every time they engage in a loan assignment would amount to the needless exchange of thousands of pages and a waste of untold hard drive space.

As noted, the final five pages of the Note provide instructions on completing the form, some terms, and notices—none of which have any direct relevance to Plaintiff's claim in this adversary. In fact, two pages are disclosures called "Borrower's Rights and Responsibilities Statement." This is more information for the borrower and does not change or affect the terms of the Note. The remaining page is disclosures related to information about the Federal Family Education Loan Program. It refers to the loan and disclosures as separate documents.

Plaintiff insists she did not understand the Note affected the consolidation. That testimony is incredible. Immediately above Plaintiff's signature on the Note are the words—bolded and in all capital letters—"I understand that this is a loan that I must repay." The language is clear and unambiguous. A paragraph above that warning contains statements that

Plaintiff read the entire note and would not sign if she had not done so. She acknowledged she was entitled to a complete copy of the Note and of the "Borrower's Rights and Responsibilities Statement." While the latter contained page numbers 8 and 9, if it was part of the Note there would have been no need for inclusion of the reference above her signature. Whatever came after pages one through four does not change the fact Plaintiff agreed to a loan consolidation and obliged herself to repay the debt.

Plaintiff argues various other deficiencies render the Note unenforceable. To support her argument, Plaintiff cites the Code of Federal Regulations, which governs the administration of Federal Family Education Loans. *See* 34 C.F.R. §§ 682.200, 682.414(a)(4)(ii), and 682.414(c)(2) (2018). Plaintiff insists ECMC failed to meet its obligations under the Regulations by failing to maintain, among other things, copies of the promissory note, repayment schedule, and documentation of the assignment. Plaintiff then accuses ECMC of forging a loan balance sheet to "give the appearance that [Great Lakes] owned the loan on 7/25/16."

First, ECMC did maintain and produce each of those documents. As noted, ECMC produced the four-page signed Note. It provided the final five pages of boilerplate language in a separate exhibit. ECMC offered testimony that it only received the first four pages of the Note from Great Lakes because the remaining pages are standard in all documents. ECMC also produced a letter evidencing the assignment from Great Lakes to ECMC. It produced a loan history and projected balance. ECMC has maintained and produced all the

information it received from Great Lakes, and the Court has no reason to doubt the veracity of any of those documents or testimony. The Great Lakes testimony about the assignment of the Note, the role of ECMC, and the Note itself was clear, direct, and credible.

Second, even if ECMC had not produced all the documents, Plaintiff has not shown ECMC violated the Regulations. The Regulations require guaranty agencies to maintain "[a]ll documentation supporting the claim filed by the lender" in addition to other records like payment and collection histories. 34 C.F.R. § 682.414(a)(1)(ii). The Regulations also require guaranty agencies to induce lenders to maintain even more detailed records, including copies of the loan and repayment schedule. *Id.*

Plaintiff asserts that ECMC has not produced a signed repayment schedule. But under the Regulations the *lender*, not the guarantor, must maintain the repayment schedule. Even so, she admits the document titled "The Solution" is in fact a repayment schedule. She does not dispute receiving a copy. Nowhere has Plaintiff pointed to a requirement of her signature on the repayment schedule. Once again, her testimony was incredible.

In any case, the lack of a signature on the repayment schedule does not render ECMC's claim invalid. A claim, at its heart, is simply a right to payment. ECMC's "right to repayment" is memorialized in the Note and assignments. The lack of a signature on the repayment schedule does not extinguish that right.

*2. Validity of Transfers of Interest*

Plaintiff argues there is insufficient evidence showing Great Lakes was the original guarantor and acquired title to the Note. While the Note may not explicitly name Great Lakes, the only conclusion that can be drawn from the evidence is that Great Lakes was the guarantor. First, by statute all federal student loans must be guaranteed by an organization "that has an agreement with the Secretary under which it will administer a loan guarantee program under the Act." *Id.* § 682.200, 20 U.S.C. § 1072(a)(1). The evidence establishes Great Lakes is such an organization. At no point has any other entity claimed to be the original guarantor of the Note.

Second, the evidence shows Great Lakes was the guarantor. It took title to the Note when Plaintiff defaulted, and then transferred its interest to ECMC. In response to one of Plaintiff's inquiries, Great Lakes produced a Payment History which names it as the guarantor and affirms Great Lakes acquired the Note through a purchase. Great Lakes is also named on the Loan Consolidation Disclosure Statement and Repayment Schedule dated September 29, 2004. The payment schedule and disclosures were all drafted by Great Lakes.

Third, the testimony offered by ECMC buttresses this conclusion. Lisa Matheny, an employee of ECMC Shared Services, stated the loan—like countless others—was automatically assigned by Great Lakes to ECMC when Debtor filed her first chapter 13 petition in 2016. Great Lakes was the guarantor of the Note.

11

Even if Great Lakes were not the original guarantor, it is clear Great Lakes "purchased" title to the Note from Anchor Bank. It then eventually assigned its interest through a letter assignment to ECMC when Plaintiff filed her 2016 petition. Indeed, Great Lakes filed a letter requesting the Court dismiss it as a defendant because it acknowledged it assigned the Note to ECMC. It was dismissed from the adversary. Plaintiff fruitlessly argues the evidence is insufficient, but she identifies no alternate guarantor. She gives no explanation as to how Great Lakes acquired such detailed information if it was not in fact the guarantor. The only reasonable conclusion the Court can reach is that Great Lakes was the guarantor. It properly acquired title to the Note when Plaintiff defaulted. Thus, this argument fails.

### 3. Lack of Consideration

A novel argument raised by Plaintiff is that ECMC "did not pay to acquire" the loan. Unchallenged is the testimony that Great Lakes paid the original lender for the consolidated loans. Put differently, she doesn't dispute:

- Plaintiff sought out consolidation of her loans and signed the Note.

- ECMC is a guarantor in the Federal Family Education Loan Program ("FFELP").

- Great Lakes was the guarantor.

- When Plaintiff defaulted, Great Lakes paid Anchor and obtained title to the Note.

- When a borrower from Great Lakes files bankruptcy, the right, title, and interest in the loan is transferred to ECMC.

The original lender received payment pursuant to federal law. 34 C.F.R. § 682.102(g). By doing so, Great Lakes became the owner of the Note. The Note

was assigned to ECMC when Plaintiff filed bankruptcy. Again, this transfer was in writing. It was one of many loans assigned to ECMC at the same time. The assignment lists Plaintiff, her loan number, and the amounts of her loans—both guaranteed and non-guaranteed amounts.[2] She did not challenge this fact when raised in a Motion to Dismiss. She stipulated to the dismissal of Great Lakes.

Great Lakes confirmed in its Motion to Dismiss that it assigned the loan to ECMC. ECMC has an agreement with the Department of Education permitting it to accept transfer of title to loans when a bankruptcy is filed. 20 U.S.C. §§ 1078(c), 1085(j). ECMC must pursue and collect student loans under regulations issued by the U.S. Department of Education. *Id.* § 1071, *et seq.*; 34 C.F.R. § 682.410, *et seq. See also Bukovics v. Navient (In re Bukovics)*, 587 B.R. 695, 703 (Bankr. N.D. Ill. 2018). As the only entity holding the Note, ECMC is the holder of the Note without the need to pay Great Lakes.

For the above reasons, *if* the claim asserted in this adversary is intended to seek a determination that the debt is dischargeable under 11 U.S.C. § 523(a)(8), it fails. Any such claim is denied and the complaint dismissed based on the record and file.

C. The Objection to the Proof of Claim

Finally, Plaintiff argues the lender, not ECMC, is the only party who may file a claim under the Regulations. Plaintiff cites 34 C.F.R. § 682.402(f)(5)(i),

---

[2] While she may not understand the difference, the testimony proved it was the total amounts listed on the second line that were the balances on her loans.

which provides the "lender shall file a bankruptcy claim on the loan with the guaranty agency in accordance with paragraph (g) of this section." Plaintiff argues therefore that the only party entitled to file a claim for the student loan is the lender, Old National Bank.

Plaintiff's argument is wrong. Plaintiff neglects to address the paragraph immediately preceding paragraph (5), which stipulates "the *holder* of the loan shall file a proof of claim." 34 C.F.R. § 682.402(f)(4) (emphasis added). The section she cites applies to loans held by the original lender, not those assigned to the guarantor. *Id.* § 682.402(g). As the current holder of the loan, ECMC properly filed a proof of claim.

As a result, the objection to claim is overruled.

D. <u>A Determination That Payments Are Not Owed to ECMC Would Not Discharge Plaintiff's Student Loans</u>

Plaintiff mistakenly equates denial of a claim with dischargeability. Even if Plaintiff is correct that ECMC isn't entitled to enforce the Note, she hasn't established it is dischargeable.

This case is a chapter 13. It has a Plan—of sorts. The Plan says there are no attorneys' fees,[3] secured claims, priority claims, or executory contracts or leases under the plan. It proposes to pay nothing per month to unsecured claims. It does, however, propose payments of $30.00 per month for 36

---

[3] While the Plan affirmatively says "None" and "pro bono" for attorneys' fees, that is not accurate. Plaintiff's attorney filed a proof of claim for $20,625.01. Perhaps the plan so provides because all but $812 predate the filing of the current bankruptcy. Any issues this raises, however, are not before the Court.

14

months. Whatever sum the payments generate will be distributed pro rata, as calculated by the Trustee after reviewing filed claims.

Once a debtor has satisfied his or her payments under the confirmed plan, the bankruptcy court grants a discharge of all debts provided for by the plan, *see* 11 U.S.C. § 1328(a). But not those debts which are nondischargeable under 11 U.S.C. § 523(a).[4] The debtor remains personally responsible for all such nondischargeable debts. *See Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch),* 258 F.3d 315, 318 n.1; *Internal Revenue Serv. v. Cousins (In re Cousins),* 209 F.3d 38, 40 (1st Cir. 2000).

Under the Code, student loan debts are dischargeable only if repayment would impose an undue hardship. Unless the debtor establishes undue hardship, "[s]tudent loans . . . fall within the category of nondischargeable debts and pass through the [chapter 13] bankruptcy process unaffected." *In re Jordan*, 555 B.R. 636, 641 (S.D. Ohio 2016) (citing *Ekenasi v. Educ. Res. Inst. (In re Ekenasi),* 325 F.3d 541, 545 (4th Cir. 2003)). A debtor remains personally liable for all nondischargeable debts. Yet Plaintiff seeks a decision in this

---

[4] The chapter 13 statutory scheme provides that

(a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt-

...

    (2) of the kind specified in paragraph (5), (8), or (9) of section 523(a) of this title. . . .

11 U.S.C. § 1328(a).

adversary and provisions in a Plan that theoretically would eliminate her personal liability for the Note. Asking that ECMC or Great Lakes be enjoined from pursuing collection would not have the same effect.

Thus, whatever the Plan may provide, Plaintiff will still owe all amounts on any unpaid student loans at the closure of this case, upon completion of payments under any Plan, or upon entry of a discharge. This will be the case even if no payments are made to ECMC through a Plan.

## CONCLUSION

The objection to ECMC's claim is overruled.

Plaintiff's obligation under the Note is not dischargeable, and the complaint is dismissed.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

Orders consistent with this decision will be entered.

Dated:  September 20, 2018

BY THE COURT:

Hon. Catherine J. Furay
U.S. Bankruptcy Judge